**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION**

| | |
|---|---|
| **DAVID EICKS,** | ) |
| | ) |
|         **Plaintiff,** | ) |
| | ) |
|   vs. | )   **CAUSE NO. 1:06-cv-0175-WTL-LJM** |
| | ) |
| **CITY OF ANDERSON, INDIANA and** | ) |
| **KEVIN S. SMITH,** | ) |
| | ) |
|         **Defendants.** | ) |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This cause is before the Court on the Defendants' Motion for Summary Judgment. The motion is fully briefed, and the Court, being duly advised, **GRANTS** the motion with regard to the Plaintiff's federal claim and **REMANDS** this case to the Madison Superior Court for consideration of the Plaintiff's state law claim for the reasons set forth below.

**SUMMARY JUDGMENT STANDARD**

Federal Rule of Civil Procedure 56(c) provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." In determining whether a genuine issue of material fact exists, "a trial court must view the record and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party." *Robin v. Espo Engineering Corp.*, 200 F.3d 1081, 1088(7th Cir. 2000). "The non-moving party, however, cannot rest on the pleadings alone, but instead must identify specific facts to establish that there is a genuine triable issue." *Bilow v. Much Shelist Freed Deneberg Ament & Rubenstein, P.C.*,

277 F.3d 882, 893 (7th Cir. 2001). "[C]onclusory statements, not grounded in specific facts, are not sufficient to avoid summary judgment," *Lucas v. Chicago Transit Authority*, 367 F.3d 714, 726 (7th Cir. 2004); rather, "[t]he party must supply evidence sufficient to allow a jury to render a verdict in his favor." *Robin*, 200 F.3d at 1088. Finally, the non-moving party bears the burden of specifically identifying the relevant evidence of record, and "the court is not required to scour the record in search of evidence to defeat a motion for summary judgment." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001).

## RELEVANT FACTS

Plaintiff David Eicks began serving as Building Commissioner for the City of Anderson on January 1, 1988. On January 1, 2004, Defendant Kevin Smith, newly-elected Mayor of Defendant the City of Anderson, terminated Eicks. Mayor Smith, a member of the Republican Party, had been elected on November 4, 2003, and prior to taking office on January 1, 2004, had implemented an interviewing process for various City positions, including that of the Building Commissioner. As part of this process, Smith invited all incumbents to submit a letter of interest if they wished to continue working for the City, to which Eicks responded in the affirmative. Smith formed search teams to interview likely candidates. Eicks and several other candidates were interviewed and the search team recommended that Smith appoint Michael Widing to the position of Building Commissioner. Smith accepted this recommendation, leading to Eicks' termination. Eicks is affiliated with the Democratic Party of Madison County and Smith is aware of that fact.

## DISCUSSION

Eicks alleges that he was terminated due to his political affiliation with the Democratic Party, and seeks relief under 42 U.S.C.A. § 1983 for violation of his First Amendment rights.

Generally, the First Amendment prohibits an employer from terminating an employee based upon his or her political beliefs or affiliation.

> Patronage dismissals severely restrict political belief and association, which constitute the core of those activities protected by the First Amendment, and government may not, without seriously inhibiting First Amendment rights, force a public employee to relinquish his right to political association as the price of holding a public job.

*Elrod v. Burns*, 427 U.S. 347 (1976). In some instances the government may abridge a person's First Amendment rights, but only if the abridgement "further[s] some vital government end" and "the benefit gained [outweighs] the loss of constitutionally protected rights." *Id.* at 363. In *Elrod*, the Court found a vital governmental interest in patronage dismissals in which the employee in question occupied a policy-making or confidential position. The Court reasoned that employees in these positions have the opportunity to obstruct the implementation of policies and otherwise thwart the goals of a new administration. *Id.* at 375. Thus, patronage dismissals of employees in these positions were appropriate because the government had a vital interest in seeing that the policies and goals of the electorate were not hindered by incumbent employees.

In *Branti v. Finkel*, 445 U.S. 507 (1980), the Court further refined the *Elrod* analysis and determined that instead of simply looking to the policy-making or confidential status of a government employee, "the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the office involved." *Id.* at 518. This concept was reiterated in *Tomczak v. City of Chicago,* 765 F.2d 633 (7th Cir. 1985), in which the court noted that, post-*Branti,* the term "policymaker" no longer had the same "talismanic significance" as it once did. *Id.* at 641.

In order to determine if a new administration's effectiveness might be undercut or thwarted by the tactics of an incumbent employee, courts must ask whether "the position held by

3

the individual authorizes, either directly or indirectly, meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation." *Nekolny v. Painter*, 653 F.2d 1164, 1170 (7th Cir. 1981). Thus, the court must look to the powers that are inherent in the office or position to determine whether a particular employee is exempt from First Amendment protection. *Tomczak*, 765 F.2d at 640. It does not matter what functions an employee actually performs during office; rather, what is important is whether his position "inherently encompasses tasks that render his political affiliation an appropriate prerequisite for effective performance." *Id.* at 641. Thus, an employee's job description, "if reliable, is the correct basis for the court's determining whether political affiliation is a legitimate requirement of the job." *Riley v. Blagojevich*, 425 F.3d 357, 364 (7th Cir. 2005).

The Defendants argue that they are entitled to summary judgment because political affiliation is a legitimate requirement of the position of Anderson Building Commissioner. The duties of the Building Commissioner are outlined in the Anderson Municipal Code §§ 161 & 163, *see* Exhibit 5 to Defendants' Motion, as well as in a position description maintained by the City that was in effect before Mayor Smith was elected, Ewald Affidavit at ¶¶ 3-4.[1] Among

---

[1] Eicks does not offer any evidence to dispute the accuracy of the Defendants' description of the job duties of the Anderson Building Commissioner, although he does make the following argument:

> As the defendants note in their brief, there apparently is no reported precedent determining that the office of municipal building commissioner within Indiana is clearly one for which political affiliation is valid. Accordingly, it would seem that issue is subject to ultimate findings of facts as to whether the position here entails policymaking, confidentiality, and/or a degree of discretion and responsibility.

Eicks' Brief at 3 (citation omitted). However, summary judgment is appropriate when the

other duties, the Building Commissioner is vested with discretionary powers to determine compliance with the applicable Building Code as well as the power to act in emergency situations without notice to the homeowner.  For example, the Building Commissioner has the power, after inspection of a premises, to declare the premises unsafe and a public nuisance as defined by applicable law.  The Building Commissioner performs on-site inspections of new and existing structures to ascertain compliance with applicable statutes, codes and regulations, and issues "stop work" orders as necessary. The Building Commissioner may issue an order requiring action relative to any unsafe premises including orders to vacate, seal, repair, remove, or continue maintenance.  If the Building Commissioner finds it necessary to take emergency action concerning unsafe premises in order to protect life, safety, or property, it may take that action without issuing an order or giving notice.

In *Selch v. Letts*, 5 F.3d 1040 (7th Cir. 1993), the court examined whether "John Selch's discharge from his position as an Indiana highway subdistrict superintendent, shortly after the new Democratic administration came into power, was a constitutionally proper exercise in the practice of political patronage."  The court noted that as an employee's responsibility increases, so does his ability to obstruct the implementation of policies. *Id.* at 1043.  The subdistrict superintendent's job description included investigating and taking corrective action on complaints and information requests from the general public and providing personal supervision, personnel, and equipment during emergencies, such as snow and ice removal, detours, accidents, and road repairs, etc." *Id.* at 1045.  In finding that political affiliation was a constitutionally valid

---

evidence of record regarding the relevant facts is undisputed.  The evidence before the Court regarding the responsibilities of Anderson Building Commissioner is undisputed; therefore, it is the province of the Court to apply the law to those facts and determine whether political affiliation is a valid requirement of the position.

requirement for the position, the court noted:

> The subdistrict superintendent's potential impact on the actual or perceived implementation of policy is most readily apparent in the area of investigating and taking corrective action on complaints and information requests. This includes the responsibility entailed in reacting to unforeseen emergency conditions that hinder travel. Subdistrict superintendents typically received fifteen to twenty phone calls per day from public officials and citizens, responding to which requires the exercise of decision-making authority and political sensitivity.

*Id.* at 1047. It is apparent that the scope of responsibility of the Anderson Building Commissioner as outlined above are markedly similar to that of the subdistrict superintendent in *Selch*. The Building Commissioner, like the superintendent in *Selch*, must investigate complaints regarding unsafe building structures and determine the appropriate course of action. He also must respond to emergencies and make decisions quickly in response to dangerous conditions.

In addition, the City's job description for the Building Commissioner sets forth the following duties:

- Administer[ing] and direct[ing] departmental operations, including providing expertise at community policy meetings

- Supervis[ing] and direct[ing] daily operations of department personnel, including recruiting, interviewing, hiring, making job assignments, and continually evaluating performance

- Serv[ing] as member of and attend[ing] meetings of Safety Board and of Electrical, H.V.A.C., and Plumbing Boards, presenting date and making policy and program recommendations

- Prepar[ing] annual department budget request and administers budget upon approval

- Exercis[ing] independent judgment in achieving department goals and desired results

Thus, the Building Commissioner has supervisory authority over department personnel and is

allowed input into policymaking decisions within the department.

Eicks contends that since Anderson Municipal Code § 33.02 (A) gives the Board of Public Safety, and not the Building Commissioner, the ultimate power of approval for expenditures and enactment of policies of the department, the Building Commissioner is not truly allowed "meaningful input into government decision-making on issues where there is room for principled disagreement on goals or their implementation." *Nekolny*, 653 F.2d at 1170. However, the fact that an individual does not have ultimate decision-making authority is "not determinative" in the political discharge analysis. *Nekolny*, 653 F.2d at 1170; *see also Selch*, 5 F.3d at 1045 (upper level management provided superintendent with guidelines but superintendent still had decisionmaking authority); *Tomczak*, 765 F.2d 633 (First Deputy Commissioner of Water Department, who answered to the Commissioner, still had "substantial input" into policymaking decisions); *Shakman v. Democratic Organization of Cook County,* 733 F.2d 1307 (7th Cir. 1983) (same as to City Park Superintendent, who was subject to the supervision of the Board of Commissioners and the Civil Service Board).

The evidence of record demonstrates that the Anderson Building Commissioner, while unable to directly implement policies or approve expenditures of the department, plays a vital role in the decision-making process and authority that is vested with the Board of Public Safety. The Commissioner's ability to provide "expertise at community policy meetings" and make "policy and program recommendations" to various city boards demonstrate his ability to, if so desired, thwart the goals of the new administration. Due to the Commissioner's position and everyday experience interpreting and enforcing the relevant laws, it is appropriate to conclude that the Board would place great weight upon the Commissioner's statements and rely upon them in making policy decisions. The Commissioner's ability to exercise "independent

judgment in achieving department goals" also speaks to his unique ability to influence the implementation of administrative policy, and further strengthens the conclusion that his position is one which might be used to obstruct the goals of a new administration.

Eicks contends that the above analysis is negated by the existence of a provision within the Anderson Municipal Code which states:

> There is created and established the office of Building Commissioner. The Building Commissioner shall be appointed by the Mayor and his or her appointment shall continue during good behavior and service.

Anderson Municipal Code § 150.05 (A). Eicks asserts that this provision essentially protects the Building Commissioner from political discharge, since his appointment should continue "during good behavior and service."

The court in *Shakman* addressed a similar argument. At issue was a provision within an Illinois statute which provided that the Superintendent could only be removed for incompetence or malfeasance. The plaintiff contended that the existence of this provision was proof that the Illinois legislature did not intend for the plaintiff's position to be one in which political discharge would be allowed. *Shakman,* 722 F.2d at 1310. The *Shakman* court dismissed this contention with the following:

> Whatever the meaning of the Illinois statute at issue here, [the plaintiff] offers no reason why the statute should operate as more than one fact in that calculus. Here it is the only fact opposing application of the policymaker exemption, and it is far outweighed by every other aspect of the position.

*Id.* Similarly, Eicks has not offered any reason why the Anderson ordinance should operate as "more than one fact" in the political discharge analysis, and the ordinance is, as in *Shakman*, contrary to the undisputed job descriptions submitted by Defendants.

For all of the reasons set forth above, the Court determines that the position of Anderson

8

Building Commissioner is exempt from the prohibition against patronage dismissals. Therefore, summary judgment is **GRANTED** in favor of the Defendants on Eicks' § 1983 claim.

The dismissal of Eicks' § 1983 claims leaves only his state law claim for wages. When all federal claims are dismissed before trial, "'the usual and preferred course is to remand the state claims to the state court unless there are countervailing considerations.'" *Williams v. Seniff*, 342 F.3d 774, 794 (7th Cir. 2003) (quoting *Payne for Hicks v. Churchich*, 161 F.3d 1030, 1043 (1998)). Eicks asks the Court to follow this usual course, and the Defendants do not suggest any reason why this would not be appropriate. Accordingly, Eicks' state law claim is **REMANDED** to the Madison Superior Court.

SO ORDERED: 10/12/2007

_William T. Lawrence_

Hon. William T. Lawrence, Magistrate Judge
United States District Court
Southern District of Indiana

Copies to:

David Allen Happe
LOCKWOOD WILLIAMS & HAPPE
happelaw@insightbb.com

Timothy Sean Lanane
tslanane@sbcglobal.net

Rudolph Reginald Pyle III
LOCKWOOD WILLIAMS & HAPPE
happelaw@insightbb.com